**SO ORDERED**



_Paul Mannes_
—————————————————
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| McCLINTOCK DAIRY LLC | : | Case No. 07-10077PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | | (Jointly Administered) |
| IN RE: | : | |
| | : | |
| McCLINTOCK FAMILY PARTNERSHIP | : | Case No. 07-10079PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | | |

### MEMORANDUM OF DECISION

Before the court are Amended Applications filed November 5, 2007, and November 24, 2007, on behalf of William L. Needler and Associates ("Applicant"), counsel for the Debtors, McClintock Dairy LLC ("Dairy") and McClintock Family Partnership ("Partnership"), for compensation for the period November 9, 2006, through October 10, 2007 ("Applications"). The Applications seek compensation of $29,338.75 for services rendered to Partnership and $43,401.75 for services rendered to Dairy together with reimbursement of out-of-pocket expenses of $2,741.20 and $3,111.84, respectively.

No opposition was filed to the Applications. While the Office of the United States Trustee appointed an Official Unsecured Creditors Committee ("Committee") consisting of Graham Dairy Supply, Inc. (Dairy Claim No. 2; $64,153.34), together with Grantsville Truck & Trailer and Yachere Feed, Inc., scheduled as holders of claims in the sums of $2,699.01 and

$5,573.54, respectively, the Committee is totally uninvolved in the administration of these cases. The Office of the United States Trustee has been similarly inactive other than suggesting in a pleading, later withdrawn, that an "appropriate holdback" be made on the Applications.[1]  On the other hand, the First United Bank & Trust, ("First United"), a secured creditor, secured by the sole lien on the real estate owned by Partnership and by receivables, equipment, livestock, and harvested crops and dairy production, has been diligently protecting its rights and is responsible for such progress as has been made in the case.  A schedule attached to Dairy's Schedule D purports to show also that First United is secured by a leasehold interest, presumably the lease from Partnership to Dairy that the Debtors valued at $1,900,000.00.  However, Dairy's Schedule G, "Executory Contracts and Unexpired Leases," states under oath that Dairy has no executory contracts or unexpired leases.  Dairy schedules two other holders of secured claims: the first, Farm Service Agency, said to hold a second lien on Dairy's equipment, and the second, First National Equipment Financing, said to hold a lien on a Claas Harvester.  The Debtors' three principals, Gary McClintock, Jeffery McClintock, and Steve McClintock, all have personally guaranteed the obligations to First United and First National Equipment Financing.

Originally, the Applicant filed Applications for compensation for the period through May 12, 2007.  Because of the fact that the Applications were not prepared according to the Compensation Guidelines for Professionals in this court found in Appendix D to the Local Bankruptcy Rules, the court did not rule on them.  Now before the court are these Amended Applications.  There are increased costs to the estates caused by the Applicant's unfamiliarity with local practice such as its lack of attention to the Compensation Guidelines.

In the absence of objection, the court will accede to the Applicant's allocation of a substantial segment of the fees, one-half to Dairy and one-half to Partnership.  In so doing, the court notes that the only claims filed in the Partnership case were those of First United, aggregating $1,815,211.62.  First United filed identical claims in Dairy.

While neither the dormant Committee nor the Office of the United States Trustee took any position on the Applications, this court has the duty and the power to review the

---

[1] Were the Committee to retain counsel, the expense of counsel would be an administrative expense payable by the bankruptcy estate. 11 U.S.C. § 330(a)(1).

Applications in the absence of objection. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 840-41 (CA3 1994); *In re Garrison Liquors, Inc.*, 108 B.R. 561, 565 (BC MD 1989).[2]

Judge Schneider's decisions in the case of *In re Leonard Jed Co.*, 103 B.R. 706 (BC MD 1989), and 118 B.R. 339 (BC MD 1990), are excellent sources for an understanding of the jurisprudence for allowance of attorney's fees in the bankruptcy court. The court begins with the "lodestar" principles that the Fourth Circuit promulgated as criteria in reviewing applications for compensation by attorneys in bankruptcy cases. *Harman v. Levin*, 772 F.2d 1150 (CA4 1985). *Harman* adopts the criteria originally set forth in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (CA5 1974).

Some general observations about the handling of this case are appropriate before dealing with the *Johnson* factors. This is a relatively simple case involving farm property in Western Maryland. The principal work of counsel that the court observed consisted of working out the issue of cash collateral pursuant to 11 U.S.C. § 363(c)(2) with First United and selling a parcel of real property, the proceeds of which were used to reduce the amount due to First United. Inasmuch as this is the Applicant's first case in Maryland, there are numerous examples of time spent for educating the firm as to this court's practices as well as the requirements of the Office of the United States Trustee, and the Local Bankruptcy Rules. There is no benefit to the estates from the expenses incurred in the time spent in obtaining resident counsel. Next, while the Applicant ostensibly complies with the requirement of paragraph B of the Compensation Guidelines by recording time spent in tenths of an hour, because of the even allocation of time spent between the two entities as to several entries, this amounts to recording entries in two tenths of an hour. The court finds that adjustments must be made by it as to both of these factors. The Debtors' Plans are in limbo, as the Disclosure Statements were withdrawn on May 11, 2007 (Dairy, Dkt. # 98; Partnership, Dkt. #56). Finally, there is overlapping among the categories in the Applications.

The court will now review the Applications under the criteria set out in *Johnson v. Georgia Highway Express, Inc.*:

---

[2] Apparently the Applicant is not familiar with this proposition as shortly after the 20 day notice period for objections ran, a representative of the firm called chambers to inquire why the an order approving the fee application had not been signed.

1.  <u>The time and labor expended</u>.  The court has no basis to dispute the time spent on this case as stated by the Applicant.  While the Disclosure Statements were withdrawn, the court assumes that much of the time spent in its creation will be recycled when amended Plans and Disclosure Statements are filed.  However, the court finds it extraordinary that over 85 hours were devoted to the negotiation and preparation of a cash collateral agreement, as shown in Section 7 of the Applications.  More time relating to cash collateral matters appears at various places in the Applications, a problem made difficult by the overlapping described above.  An investment of this amount of time in cash collateral matters in a case of this size is rare.  Furthermore, the court is puzzled on account of its considerable experience with First United's counsel, Roger Schlossberg, an active bankruptcy practitioner whom the court observes is not a person to waste time or needlessly prolong litigation.  Inasmuch as the Debtors have selected out-of-town counsel, the court does not propose to penalize counsel for the time devoted to travel between this court and other jurisdictions where he is said to have pending matters.  The court assumes that there has not been double billing of travel time with cases pending in other jurisdictions and this case.

2.  <u>The novelty and difficulty of the questions raised</u>.  This is a relatively simple case under Chapter 11 involving one active secured creditor and two or three relatively inactive secured creditors.[3]  The unsecured creditors have been silent and, as stated before, the Committee dormant.

3.  <u>The skill required to properly perform the professional services rendered</u>.  This is as close to a garden variety case under Chapter 11 as one could imagine.  One needs experience in cases under Chapter 11 combined with an understanding of problems peculiar to farmers.  The Applicant's work has been aided by the absence of attention to the case by the Committee.

4.  <u>The preclusion of other employment by the attorney to the acceptance of the case</u>.  Aside from the fact that the time spent on this case could not have been spent on another case, this case does not present any possibility of conflicts of interest that preclude other employment.

5.  <u>The fee charged is in line with compensation awarded in this District for cases of this size</u>.  The fee charged is commensurate with charges customarily made in this District.

---

[3]  M & M Weaver & Sons, Inc. filed two claims, one of which was a secured claim in the sum of $28,294.57.  Dairy scheduled this creditor as holding an unsecured claim.

6. <u>Whether the fee is fixed or contingent</u>. As all attorney's fees in cases under Chapter 11 are contingent in that they require court approval, this is not a factor.

7. <u>The time limitations imposed by the client or the circumstances</u>. Because of the cash drain on the Debtors, there was some urgency in completing arrangements for the use of cash collateral. This took up a large amount of the time spent on this case. This is also unusual in that such matters are usually worked out either before the filing of a case or early in its administration.

8. <u>The amount involved and the results obtained</u>. At this stage of the case, it is difficult to predict whether the Debtors will emerge successfully from Chapter 11. After the filing of this Application, the Applicant worked out an agreement with the Farm Security Administration. Similarly, the Applicant consummated an agreement with First National Equipment Financing relating to a forage harvester as well as to agreements as to modification of the automatic stay with First United.

9. <u>The undesirability of the case</u>. This is not a factor.

10. <u>The experience, reputation and ability of counsel</u>. A WestLaw search pulled up approximately 90 cases involving the Applicant. While a large number of these cases were unsuccessful, there is no dispute that the Needler firm has handled a large number of agricultural cases in the bankruptcy court.

11. <u>The nature and length of the professional relationship with the clients</u>. This is the Applicant's first experience with the McClintock group.

In ruling on these Applications, the most important factor for the court to consider is that of the results obtained. *In re International Coins & Currency, Inc.*, 26 B. R. 256, 261 (BC VT 1982). One cannot make this important finding with any certainty until after the hearing on confirmation of the Debtors' Plans. With agreements in place as to the secured creditors, the outcome of this case will depend upon Debtors' performance of their obligations under the agreements and the ballots filed by the unsecured creditors without priority. For the reasons stated above, there will be some diminution of the amounts sought.

An appropriate order will be entered.

cc:     McClintock Dairy LLC
        1300 Pigs Ear Road
        Grantsville, MD 21536

        McClintock Family Partnership
        1300 Pigs Ear Road
        Grantsville, MD 21536

        William L. Needler
        555 Skokie Blvd
        Suite 500
        Northbrook, IL 60062

        Donald Scott Goldbloom
        12590 National Pike
        Grantsville, MD 21536

        Jayci Shaw Duncan
        100 S. Liberty Street
        P.O. Box 360
        Cumberland, MD 21501-0360

        Office of the United States Trustee
        W. Clarkson McDow, Jr.
        6305 Ivy Lane, Suite 600
        Greenbelt, MD 20770

        Graham Diary Supply Inc.
        1581 Business Route 66
        Greensburg, PA 15601

        Grantsville Truck & Trailer
        776 Springs Road
        Grantsville, MD 21536

        Yachere Mobile Feed Service
        415 Somerset Ave
        Rockwood, PA 15657

        Larry D. Adams
        Assistant U. S. Attorney
        United States Attorneys Office
        36 South Charles Street, 4th Floor
        Baltimore, MD 21201

Roger Schlossberg
134 West Washington Street
P.O. Box 4227
Hagerstown, MD 21741-4227

Sheryl L. Lohaus
Gross & Welch, P.C., L.L.O.
2120 S. 72nd Street, Ste. 1500
Omaha, NE 68124

All interested parties requesting notice

**End of Memorandum of Decision**